**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**McGill Smith Punshon, Inc.,**

   *Plaintiff,*

v.                 Case No.: 3:18-cv-288-TMR
                   Judge Thomas M. Rose

**Fireblocks, LLC, et. al.,**

   *Defendants.*

---

**ENTRY AND ORDER STAYING ALL CAUSES OF ACTION AGAINST ALL DEFENDANTS, DENYING DEFENDANTS 100 EAST THIRD ST, LLC, 115 E. THIRD, LLC, AND WINDSOR CONSTRUCTION SERVICES LLC'S MOTION TO DISMISS (Doc. No. 10); DENYING DEFENDANT NICHOLAS KINNEY'S MOTION TO DISMISS (Doc. No. 12); AND REQUIRING 100 EAST THIRD ST, LLC AND 115 E. THIRD, LLC TO SUBMIT TO THIS COURT UPDATES TO STATUS OF THE ARBITRATION EVERY 60 DAYS.**

---

Pending before the Court are motions of Defendants 100 East Third St, LLC ("100 ETS"), 115 E. Third, LLC ("115 ETS"), Windsor Construction Services LLC ("Windsor"), and Nicholas Kinney ("Kinney") to dismiss Plaintiff McGill Smith Punshon, Inc.'s ("MSP") claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. Nos. 10, 12. Plaintiff MSP filed their complaint on August 23, 2018. Doc. No. 1. Defendants 100 ETS, 115 ETS, and Windsor jointly filed a Motion to Dismiss on October 15, 2018. Doc. No. 10. Defendant Kinney filed a Motion to Dismiss on November 18, 2018. Doc No. 12. MSP filed a response to the first motion on

1

November 5, 2018 and to the second motion on December 10, 2018. Doc. Nos. 11, 14. Defendants 100 ETS, 115 ETS, and Windsor jointly filed a reply to MSP's response on November 19, 2018. Doc. No. 13. No party has moved to stay the proceedings or to compel arbitration. Defendant Fireblocks has not filed anything in response to the complaint, or joined the Motions to Dismiss. *See* Doc. No. 1-2 PageID 15, 25; Doc. No. 11 at 2, n. 1.

For reasons discussed below, the Court will treat Defendants Motions to Dismiss as motions to dismiss or, in the alternative, to stay the proceedings. The Court hereby orders that because MSP sufficiently pleads a cause of action against multiple defendants including Defendant Kinney, Kinney's Motion to Dismiss is **DENIED**. The Court hereby **GRANTS in part** and **DENIES in part** 100 ETS and 115 ETS Motion to Dismiss. The Court hereby **DENIES** Defendants Windsor's Motion to Dismiss. The Court hereby **STAYS** this case as to all parties pursuant to section 3 of the Federal Arbitration Act ("FAA") and **ORDERS** Defendants 100 ETS and 115 ETS to submit updates on the status of the arbitration every sixty (60) days.

**I.      Background**

Plaintiff MSP is a Cincinnati based architecture and engineering firm. Doc. No. 1 ¶ 12. MSP alleges entering into an agreement listed as the Architect with Defendant Fireblocks LLC ("Fireblocks") listed as Owner on February 7, 2017. *Id.* ¶ 13; Doc. No. 1-2 at 1. The agreement is a Master Agreement ("Master Agreement") between Owner and Architect. Doc. No. 1 ¶ 13; Doc. No. 1-2 PageID 15. The Master Agreement also has a provision that applies the Master agreement to service orders, thereby forming a Service Agreement. Doc. No. 1-2 PageID 15 (Article 1 § 1.2 of the Master Agreement). MSP entered into two service orders with 115 ETS listed as the Owner on February 7. 2017 and on September 20, 2017. Doc. No. 1-3 PageID 28; Doc. No. 1-4 PageID 38. MSP also entered into two service orders with 100 ETS listed as the

2

Owner on April 25, 2017 and on September 20, 2017. Doc. No. 1-5 PAGEID 55; Doc. No. 1-6 PageID 66. Defendants Windsor and Kinney are not listed parties to any service order or the Master Agreement. Doc. No. 11 at 2.

MSP alleges they conveyed architectural drawings and construction and design documents to Fireblocks, 100 ETS, and 115 ETS, via instruments of service (IOS works), pursuant to the above agreements (Master Agreement and Service orders). Doc. No. 1 ¶¶ 17-8. MSP also asserts they own the copyrights to the IOS works, which they registered with the U.S. Copyright office. *Id.* ¶¶ 19-21. MSP, in their complaint, also alleges article six of the Master Agreement governs the scope of the copyrights of the IOS works between the Owner and Architect. *Id.* ¶ 22; Doc. 1-2 PageID 19. Specifically, the Master Agreement grants a nonexclusive license for the purpose of completing the project. Doc. 1-2 PageID 19. Additionally, the nonexclusive license allows for the owner to authorize contractors, subcontractors, sub-subcontractors and the Owner's consultants to reproduce portions of the IOS works to complete the project. *Id.* The licenses referenced in the Master Agreement also terminate when the Architect rightfully terminates a Service Agreement under section 8.3 and 8.4 of the Master Agreement. *Id.*

MSP alleges four causes of action against the Defendants. Count I alleges that all Defendants (including Kinney) infringed upon the copyrights of the IOS works since June of 2018. Doc. No. 1 ¶¶ 24-31. MSP alleges in Count II that Fireblocks, 100 ETS, and 115 ETS breached the Master Agreement and Service Orders respectively by materially breaching the agreements when they failed to pay as agreed. *Id.* ¶¶ 32-39. In Count III, MSP alleges that all defendants are unjustly enriched by the conveyance and retention of the IOS works without payment. *Id.* ¶¶ 40-45. MSP finally alleges in Count IV all defendants have committed

conversion by appropriating the IOS works and refusing to return them after a demand by MSP. *Id,* ¶¶46-49.

Defendants 100 ETS, 115 ETS and Windsor brought the first Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6) because of arbitration provisions within the Master Agreement. Doc. No. 10; *see* Doc. No. 1-2 PageID 20-21 (Article 7 of the Master Agreement).

The Dispute Resolution Provisions state in pertinent part: "The Owner and Architect shall commence all claims and causes of action, whether in contract, tort, or otherwise, *against the other* arising out of or related to any Service Agreement, with the method of binding dispute resolution selected in this Master Agreement." Doc. No. 1-2 PageID 20 (section 7.1.1 Master Agreement) (emphasis added). "The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question *between them* by mediation . . . administered by the American Arbitration Association." *Id.* (section 7.2.2 Master Agreement) (emphasis added). "Any claim, dispute or other matter in question arising out of or related to a service agreement shall be subject to mediation as a condition precedent to binding dispute resolution." *Id.* (Section 7.2.1 Master Agreement). Finally, section 7.2.4 of the Master Agreement stipulates that arbitration in accordance with section 7.3 is the binding dispute resolution. *Id.*

The Arbitration Clause states in pertinent part: "[A]ny claim, dispute or other matter in question arising out of or related to a Service Agreement subject to, but not resolved by mediation shall be subject to arbitration . . . administered by the AAA" *Id.* PageID 21 (section 7.3.1 Master Agreement). "Either party . . . may [join] persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined *consents in writing* to such joinder." *Id.* (section 7.3.4.2 Master Agreement) (emphasis added).

Moreover, Defendants 100 ETS, 115 ETS, and Windsor all allege they are parties to the Arbitration Agreement within the Master Agreement. Doc. No. 13 at 5-6. Defendant Kinney brought the second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for MSP failing to pursue arbitration, and for not pleading sufficient facts to allow him to defend the allegations. Doc. No. 12.

Defendants Fireblocks, 100 ETS and 115 ETS appear to be signatories to Service Orders, which, based on the language of the Master Agreement, merge with the Master Agreement into Service Agreements. *See* Doc. Nos. 1-2, 1-3, 1-4, 1-5, 1-6. As stated above, the Master Agreement has a binding Arbitration Clause, which 100 ETS and 115 ETS seek to enforce through their motion. Doc. No. 13 at 6. Defendants Windsor and Kinney are not signatories to the Master Agreement or any Service Order, but nonetheless wish to enforce the Arbitration Clause against MSP. *Id.* at 5-6; Doc. No. 11 at 2. They assert that the joinder provision in section 7.3.4.2 entitles them to be a party to the Arbitration, and the claims against them should similarly be dismissed. Doc. No. 13 at 5-6.

The Court will discuss the standard of review for the Motions to Dismiss below. After the standard is discussed, the Court will analyze the Motions to Dismiss based on applicable law and the arguments of the parties.

## II. Standard of Review for Failure to State a Claim

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). Moreover, the purpose of the motion is to test the formal sufficiency of the statement of the claim for relief. *Id.* "[F]or the purposes of

a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

The Sixth Circuit has held "that a party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party 'has failed to state a claim,' and a motion to dismiss on such grounds is 'properly construed as a motion . . . under 12(b)(6).'" *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (quoting *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014). District Courts have also interpreted a party's motion to dismiss based on arbitrability of claims as an affirmative defense provided by section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16. *E.g., Tower v. Amazon.com, Inc.*, No. 15-cv-2405, 2016 U.S. Dist. LEXIS 109924, at *3 (S.D. Ohio Aug. 18, 2016). The Court treats the Motions to Dismiss for failure to pursue arbitration as both a 12(b)(6) motion or, in the alternative, to stay the proceeding pursuant to the FAA. The remainder of the 12(b)(6) motion standard is explained below.

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Further, the factual allegations must be enough to raise a right to relief above the speculative level and must also do something more than merely create a suspicion of a legally cognizable right. *Id.* However, the Court is not bound to accept as true a legal conclusion couched as factual allegation or unwarranted factual inferences. *Id.* at 555; *Morgan v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987); *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moreover, only well-pleaded facts are construed liberally in favor of the party opposing the motion to dismiss. *Lillard v. Shelby County Bd. Of Educ.*, 76 F. 3d 716, 726 (6th Cir. 1996).

"When evaluating whether the plaintiff has stated a cognizable claim, the court generally may not consider matters outside of the pleadings." *Bihn*, 980 F. Supp. 2d at 898 (citing *Hammond v. Baldwin*, 866 F. 2d 172, 175 (6th Cir. 1989). When matters outside the pleading are considered, Federal Rule 12(b) instructs that the motion should instead be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b). However, the Sixth Circuit has clarified what a court may consider without reaching matter outside the pleading. When a copy of a written instrument is attached as an exhibit to a pleading, Federal Rule of Civil Procedure 10(c) considers it a part of that pleading for all purposes. *Bihn*, 980 F. Supp. 2d at 898 (citing *Weiner v. Klais & Co.*, 108 F. 3d 86, 88 (6th Cir. 1997)). Under such circumstances, as here, the court may consider the extraneous documents without converting the motion to one for summary judgment. *Id.* (citing *Weiner v. Klais & Co.*, 108 F. 3d 86, 89 (6th Cir. 1997)).

### III. Analysis of Motions to Dismiss

Defendants 100 ETS, 115 ETS, and Windsor's Motion to Dismiss, and part of Defendant Kinney's Motion to Dismiss hinge on the arbitrability of Plaintiff MSP's claims. Doc. No. 10 at 3; Doc. No. 12 at 4-5. Moreover, the motions allege that the Master Agreement has a binding arbitration agreement that all moving parties are entitled to enforce, and that the matters in the complaint fall under the provision. Doc. No. 13 at 5-6. All Defendants to the present motions move this Court to dismiss because of the binding Arbitration Clause pursuant to Ohio Revised Code 2711.01. *See* Doc. No. 10 at 2; Doc No. 12 at 3. MSP does not dispute the binding nature of the arbitration agreement, instead, MSP alleges that all or most of the counts against Defendants fall outside of the scope of the arbitration agreement. Doc. No. 11 at 5-7. Additionally, MSP requests that as an alternative to dismissal of the case, a stay of the action pending arbitration is more appropriate because of language of section three of the FAA. *Id.* at 8.

Specifically, "the court . . . shall stay the trial of the action until . . . arbitration has been had." 9 U.S.C. § 3.

Defendant Kinney also alleges that the facts, as they are pleaded in MSP's complaint, do not rise above the speculative level and should be dismissed under 12(b)(6) for that reason as well. Doc. No. 12 at 4. Specifically, Kinney says that the complaint only uses his name three times throughout the complaint, and in doing so, MSP has failed to put Kinney on adequate notice to respond to the complaint. *Id.* MSP asserts that, although the complaint does not specifically identify Kinney in the counts, the incorporation of the prior paragraphs and reference to all defendants in specific counts puts Kinney on sufficient notice to proceed with the case. Doc. No. 14 at 5-7. The Court will proceed with arbitrability of the claims against the moving defendants, and then proceed to Kinney's motion of sufficiency of the pleading.

**A. Motions to Dismiss Based Upon Arbitrability of the Claims**

The parties cite different authorities as to the dismissal of the action (Defendants) and staying of the action (Plaintiff). However, the primary case cited by the Defendants in support of their motions to dismiss is an interpretation of the FAA. *Knight v. Ideabuyer, LLC*, 723 F. App'x 300 (6th Cir. 2018). In order for the Federal Arbitration Act to apply, there must be a written agreement with a binding arbitration clause, in commerce. *See Legacy Wireless Servs. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1052 (D. Or. 2004). Although Defendants cite the Ohio Statute, both cite federal authority for their propositions that the present case should be dismissed (Defendants) or stayed (Plaintiff). Doc. No. 10 at 3; Doc No. 12 at 3-4; Doc. No. 14 at 10-11 The Court finds that, although all parties appear to be from Ohio, and, from the pleadings, that all transactions took place within the state, the transactions alleged sufficiently effect interstate

commerce and involve Federal law such that the Federal Arbitration Act is the controlling law. *See Legacy* 314 F. Supp. 2d at 1052.

The FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). This embodies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). However, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. V. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). When ruling on a motion to dismiss, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 812 (6th Cir. 2008) (citing *Javitch v. First Union Sec., Inc.*, 315 F. 3d 619, 624 (6th Cir. 2003). When doing so, the Court must resolve any ambiguity in arbitrability in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone*, 460 U.S. at 24-25).

The *Fazio* Court dictated four determinations a district court should make before staying the proceedings. 340 F.3d at 392. First, the Court should determine whether the parties agreed to arbitrate. *Id.* Second, the Court must determine the scope of that agreement. *Id.* Third, if Federal Statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable. *Id.* Finally, if the Court finds that not all of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceeding pending arbitration. *Id.*

1. **Which Parties Agreed to Arbitrate**

Determining which parties agreed to arbitrate requires the Court to examine state contract law that governs the agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). All parties appear to be residents of Ohio, and the agreement appears to be executed in Ohio, for an Ohio construction project. Thus, the Court will look to Ohio contract law to determine who are parties to the arbitration clause in the master agreement.

In Ohio, "to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." *Noroski v. Fallet* (1982), 2 Ohio St. 3d 77, 79. Ohio has also adopted the Second Restatement of Contracts approach to third party beneficiaries. *See Boggs v. Columbus Steel Castings Co.*, 2005-Ohio-4783, ¶ 8 (Ct. App.) (citing *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 40). The Restatement says in pertinent part: " (1) unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either; (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." "The third party need not be named in the contract, but must be contemplated by the parties and sufficiently identified" *Boggs*, 2005-Ohio-4783, ¶ 9 (Ct. App.); Restatement (Second) of Contracts § 302 (1981).

The Court will first address the signatories of the various contracts. MSP, Fireblocks, 100 ETS, and 115 ETS have all signed agreements that contain the arbitration clause at issue. Moreover, MSP and Fireblocks were signatories to the master agreement, and MSP, 100 ETS, and 115 ETS were signatories to subsequent service orders that merged with the master

agreement, forming a service agreement. In this respect, the Court finds, based on the pleadings and attached filings, that MSP, Fireblocks, 100 ETS, and 115 ETS, were parties to the contracts containing the arbitration agreement, whose scope will be discussed below.

Defendants Kinney and Windsor were not signatories to any of the agreements, and MSP challenges whether any meeting of the minds occurred. Under the intent to benefit theory in Ohio contract law, the Court cannot determine that either Kinney or Windsor are parties contemplated by the agreements. *See Boggs*, 2005-Ohio-4783, ¶ 9 (Ct. App.). Moreover, the Master Agreement explicitly states that the Master Agreement and Service Agreements do not create third party rights. *See* Doc No. 1-2 PageID 24 (section 10.5 of the Master Agreement says "[n]othing contained in this Master Agreement or in a Service Order shall create a contractual relationship . . . with a third party"). Even if Windsor and Kinney were contemplated, they were not sufficiently identified within the agreements to entitle them to the benefit of the arbitration clause. *See Boggs*, 2005-Ohio-4783, ¶ 9 (Ct. App.).

The Master Agreement does contain a joinder clause, but the joinder clause requires non-parties to the agreement to consent to be bound to the arbitration before joinder can occur. Because the Court has neither received any evidence of such a written consent of either Kinney or Windsor and would be unable to consider it under the motion to dismiss standard, the Court finds that Kinney and Windsor are not parties to the arbitration agreement. Therefore, any claims against Kinney and Windsor are not arbitrable under the contract.

2. **Scope of the Arbitration Clause within the Master Agreement**

When determining the scope of the arbitration agreement, the Court looks at the language of the contract to determine whether the alleged counts fall within the scope of the agreement. *See Fazio*, 340 F.3d at 395. In doing so, the Courts often look to whether a claim can be brought without reference to an agreement containing the arbitration clause. *NCR*, 512 F.3d. at 813 (citing *Fazio*, 340 F.3d at 395).

Here, the arbitration agreement is broad, including compulsory mediation as a perquisite to binding arbitration. The language in the mediation provision is as follows: "[a]ny claim, dispute or other matter in question arising out of or related to a service agreement." Doc. No. 1-2 PageID 20-21. The language in the mediation clause is broad and covers essentially anything related to a service agreement. Similarly, the arbitration provision reads as follows: "[A]ny claim, dispute or other matter in question arising out of or related to a Service Agreement subject to, but not resolved by mediation shall be subject to arbitration." *Id.* This language also reads broadly to cover essentially anything related to the agreement. With that in mind, the Court now turns to the individual counts.

Count I is a copyright infringement claim against all defendants. The Court finds, that the complaint as written, does not allow for the Court to find infringement without referring to the agreement. MSP alleges that it can maintain its suit without reference to the agreement because of its registration of the copyrights. Doc. No. 11 at 5-6. However, copyright law requires both ownership of the original work of authorship and that the defendant copied it without a right to do so. *See NCR*, 512 F.3d. at 814 (citing *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)). In the absence of direct evidence of copying, the plaintiff may establish an inference of copying by showing (1) access to . . . the work by the defendant[] and (2) substantial similarity between the two works at issue. *Id.* (citing *Kohus*, 328 F.3d at 853-54).

MSP has not plead any direct copying, and more closely alleges the substantial similarity test described above. With this in mind, licenses were granted to the signatories to various service agreements and MSP did not allege access to the material outside of that which was allowed in the agreement. The Master Agreement grants licenses to signatories to use in furtherance of their projects. This also allows distribution to construction agents and others by the Owner, in furtherance of the project, and reproduction in furtherance of the agreement as well. The Court finds that whether the scope of the license was exceeded by Defendants and infringed on MSP's exclusive rights is a matter for the arbitrator to decide, and that Count I is subject to arbitration pursuant to the agreement.

Count II is a breach of Contract claim against Fireblocks, 100 ETS, 115 ETS. All of the alleged breaches are of contracts containing the arbitration agreement, and MSP does not dispute that. Thus, the Court cannot resolve this claim without reference to the agreement, and Count II is subject to arbitration pursuant to the agreement.

Count III is a claim for unjust enrichment for the retention of the actual IOS works without permission. However, as discussed above, a limited license for the IOS works was granted pursuant to the master agreement. The Court therefore finds that it cannot resolve the unjust enrichment claims without reference to the agreements containing arbitration clauses. Thus, Count II is subject to arbitration pursuant to the agreement.

Finally, Count IV is a claim for conversion of the physical IOS works, similar to Count III. For the same reasons discussed in Count III and Count I, the Court finds that it is unable to resolve the dispute without reference to the agreements, with license provisions. Thus, Count IV is also subject to arbitration pursuant to the agreement.

In sum, the Court finds that all of the Counts alleged by MSP are subject to arbitration, with those who are parties to the arbitration agreement.

3. **Whether Congress Intended to Make Copyright Claims Non-Arbitrable**

The next question the Court must answer is whether Congress intended copyright claims to be non-arbitrable. The burden of showing that Congress intended copyright to be non-arbitrable is on MSP. *See LDS, Inc. v. Metro Can. Logistics, Inc.*, 28 F. Supp. 2d 1297, 1300 (D. Kan. 1998) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483 (1989)). To establish Congressional intent, the party must point to the "text of a particular statute, its legislative history, or an inherent conflict between arbitration and the purpose of the statute." *Id.* at 1300-01.

Here, MSP has not proffered anything showing that copyright law is non-arbitrable. Moreover, MSP only says that it should not have to arbitrate copyright claims because it registered its works with the Copyright Office. This does not meet the burden required to show that Copyright claims are not arbitrable. Thus, the Court finds that Congress intended copyright claims to be arbitrable because of the presumption of arbitrability.

4. **Whether the Court Should Stay the Actions of Kinney, Windsor, and Fireblocks Pending the Completion of Arbitration of Claims between 100 ETS, 115 ETS, and MSP**

Having determined that all of the claims are arbitrable as to the moving parties to the Master Agreement, the Court now turns to whether the remaining actions, against non-parties to the contract, Windsor and Kinney, and non-movant Fireblocks, should be stayed pending arbitration. The Supreme Court has commanded that piecemeal resolution is required when that would give effect to an arbitration agreement. *Moses H. Cone*, 460 U.S. at 20. However, this Court has inherent power to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel, and for litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Put otherwise, the Court, at its discretion, may stay non-arbitrable claims pending completion of arbitration, or may proceed with them without arbitration taking place. *See Yamasaki Korea Architects, Inc. v. Yamasaki Assocs.*, No. 08-10342, 2008 U.S. Dist. LEXIS 95261, at *12 (E.D. Mich. Nov. 17, 2008).

Here, the Court finds that the interests of all parties, and this Court's judicial economy, would be served by also staying the actions against Fireblocks, Kinney, and Windsor. Moreover, this allows the parties to join the arbitration via the joinder provision, if Windsor and Kinney so wish. Further, if Windsor and Kinney do not wish to consent to arbitration, they may wait for arbitration to finish so that the arbitrator's interpretation of the agreement is already determined. In other words, because the claims against Windsor and Kinney are related to the scope of the licensing clause, they may wish to wait for its interpretation by an arbitrator before proceeding. Finally, because the Court will be staying the proceedings in regard to the other parties as well, it finds that the judicially efficient resolution is to stay all claims and resume any non-arbitrable claims upon entering the judgment of the arbitration.

**B. Motion to Dismiss Kinney's Case for Failing to State a Claim**

As discussed in the motion to dismiss standard, the Court merely reviews the sufficiency of the complaint alleging causes of action against a defendant. *Bihn*, 980 F. Supp. 2d at 897. In other words, the motion to dismiss is meant to test the formal sufficiency of the pleadings. *Id.*

Here, Kinney alleges he does not have sufficient knowledge to proceed with the answer stage of pleading. Moreover, he claims he was not listed by name enough to know what to admit and deny to in an answer. MSP alleges against all defendants in counts I, III, and IV and against specific defendants in Count II. Further, MSP identified Kinney by name as a defendant in its

complaint. The Court finds MSP's counts as alleged put Kinney on sufficient notice to move forward in the proceedings. The Court does not find a mere recitation of causes of action, however, it finds sufficient detail set forth tying Kinney in with the remainder of the defendants. Moreover, none of the other defendants challenged the complaint on this ground, and instead do so solely on arbitrability. If the other defendants, including Windsor, who was not a signatory to any contract, are able to discern what is alleged against them, then so to can Kinney put on a sufficient defense to the complaint as pleaded. Thus, the Court **DENIES** Defendant Kinney's Motion to Dismiss as to sufficiency of the pleadings.

## IV. Disposition of the Claims

The Court hereby enters a **STAY** on all proceedings based on the above analysis. Although the Court had before it two Motions to Dismiss, because Defendants 100 ETS, 115 ETS, and Windsor based their motion on the arbitrability of the claims MSP alleges, the Court treats the Motion to Dismiss as a motion in the alternative to stay proceedings pending arbitration. Although courts in the past have dismissed cases based on arbitrability of cases, they have done so when all claims are arbitrable. *See, e.g., Knight*, 723 F. App'x at 300-01 (6th Cir. 2018). Here, there are both arbitrable and non-arbitrable claims and many parties to this suit. Thus, the Court finds that staying the action will do the most justice to the parties and to this Court's judicial efficiency.

The Court hereby **GRANTS** 100 ETS and 115 ETS motion to stay and **DENIES** 100 ETS and 115 ETS Motion to Dismiss pursuant to the FAA and the arbitration agreement between 100 ETS and MSP and 115 ETS and MSP. The Court further **ORDERS** 100 ETS and 115 ETS submit status updates of the arbitration every sixty (60) days. The Court **DENIES** Defendants Kinney and Windsor Motions to Dismiss based on the Court's finding that the claims against

16

them are non-arbitrable. The Court hereby orders that because MSP sufficiently pleads a cause of action against multiple defendants including Defendant Kinney, Kinney's Motion to Dismiss is **DENIED**.

The Court **STAYS** all proceedings because the arbitrable and non-arbitrable claims against all defendants arise out of contracts which contain the arbitration provision. The Court will resume the proceedings against Fireblocks, Kinney, and Windsor on motion supported by good faith basis to resume the proceedings or when judgment is entered on the arbitrable claims against 100 ETS and 115 ETS.

**DONE** and **ORDERED** this Tuesday, August 06, 2019.[1]

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial intern Anthony D. Maiorano in drafting this opinion.